CASE 37.—ACTION BY A. H. JOHNSON'S ADMINISTRATRIX
AGAINST LOGAN JOHNSON AND OTHERS FOR A
SETTLEMENT OF HER HUSBAND'S ESTATE.—
June 11, 1909.

## Johnson, &c. v. Johnson's Admx.

Appeal from Perry Circuit Court.

L. D. LEWIS, Circuit Judge.

Judgment for plaintiff, defendants appeal.—Affirmed.

1.  Pleading—Reply—Failure to File—Effect.—Where an amended
    answer and cross-petition were filed merely to make the plead-
    ings conform to the proof, the fact that no reply was filed
    controverting their allegations of facts, merely tending to
    establish defendant's contentions on the main issue, a reply
    having been filed to the first amended answer and cross-peti-
    tion, did not entitle defendants to a judgment.
2   Trusts—Creation—Real Estate.—A father conveyed land to
    the husband of his daughter, who built a house upon it and
    agreed to pay as a consideration a certain sum. The deed did
    not show that the land was conveyed in trust for the wife,
    and she did not claim it as her own, and the husband alone
    asserted ownership. At the time it was not unusual for the
    father to convey land to his son-in-law rather than to his
    daughter. . The wife's brothers testified that it seemed to
    them that it was the intention of their father to provide a
    home for his daughter. Held, that the husband did not hold
    the land in trust for his wife.
3.  Husband and Wife—Wife's Separate Property—Evidence as to
    Title.—That a grocery store was conducted in the name of
    the wife, and the bank account so kept, was sufficient to create
    a presumption of ownership by her.

EVERSOLE & EVERSOLE for appellants.

### AUTHORITIES CITED.

Williams v. Williams, 76 S. W. 413; Black v. Black, 61 S. W. 456; Jennings v. Taylor, 59 S. W. 853; 65 S. W. 601; Pierce v. Pierce, 46 Ky. 433; 5th Bush, 454; 78 Ky. 105; 60 Ky. 422; Ellis v. Johnson, 4 Ky. L. R. 991; Allen v. Russell, 78 Ky. 105; 4 K. L. R. 991; Ky. Stat. Sec. 2128; 58 S. W. 472; Ky. Stat. Sec. 1407; Bowles v. Winchester, 13 Bush, 1.

MILLER & WARD for appellee.

### AUTHORITIES CITED.

Sec. 2353 Ky. Statutes; 10th Ky. Law Reporter, page 92; 11th Ky. Law Reporter, page 548—Russel vs. Russel; 31 S. W. 275, Sherley v. Sherley, 4th Ky. Law Reporter, page 407; 15th Ky. Law Reporter, page 573; 19th Ky. Law Reporter, page 25; 24th Ky. Law Reporter, page 2016; 14th Ky. Law Reporter, page 512; 4th Ky. Law Reporter, page 307, Ecton &c. v. Moore &c.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

On April 26, 1907, A. H. Johnson, a resident of Perry county, Ky., died intestate, leaving surviving him his widow, Leah D. Johnson, a son, Logan Johnson, a daughter, Mary Belle Witt, and a granddaughter, Alma Landrum, as his only heirs at law. In the month of May, 1907, Leah D. Johnson qualified as administratrix of her husband's estate. Thereafter she instituted this action in the Perry Circuit Court for a settlement of her husband's estate. She charged that there was only $467.87 in money and other personal property belonging to the estate of her deceased husband which came into her hands as administratrix, that the debts due by the decedent exceeded the amount of his personal estate, and it would be necessary to sell a certain tract of land set forth in the petition for the purpose of paying decedent's debts. She further alleged that this was the only tract which decedent

owned at the time of his death. Appellants, as heirs of decedent, each filed an answer and cross-petition, charging: That decedent, at the time of his death, was the owner of four additional tracts of land designated as tracts 1, 2, 3 and 4; that decedent, on the ———— day of ————, 1907, purchased tract No. 1 from Brown Baker, and paid to him the full purchase price; that decedent was heavily involved financially at the time, and had the deed to said tract of land executed to himself and wife, with remainder to his son, Logan Johnson; that tract No. 2, which is set out and described in the answer and cross-petition, was purchased by decedent Johnson from J. J. C. Bach on the 24th day of September, 1900; that decedent paid the full purchase price of said land, and had the deed made to himself and wife, during their lives, with remainder to appellant, Logan Johnson, and Robert Feltner, an infant son of Leah D. Johnson by a former marriage; that tract No. 3 was a part of the tract of land deeded to A. H. Johnson by William Standafer in trust for his daughter Susan, who was the first wife of A. H. Johnson; that this boundary of land was deeded to Mary Belle Witt by the decedent, and the deed was made without valuable consideration, and was a deed of trust made for the benefit of decedent; that tract No. 4 was purchased by decedent from Polly Ann Combs; that the decedent paid the full purchase price thereof, and had the deed executed to his wife, Leah D. Johnson; that this deed was in fact a deed of trust for the benefit of decedent. It was also denied in each of the answers and cross-petitions that the personal estate of the decedent, which came into the hands of the administratrix, consisted of only $467.87. It was af-

firmatively charged that it consisted of about $800. The allegations of the amended answers and cross-petitions were denied by reply. After the proof was taken appellants filed a joint amended answer and cross-petition for the purpose of conforming the pleadings to the proof, and charged: That on the—— day of ——, 188—, Wm. Standafer, a resident of Perry county, Ky., wishing to divide his land among his children, and in order to provide a home for each of them, allotted to his daughter Susan, the first wife of A. H. Johnson and the mother of appellants, Logan Johnson and Mary Belle Witt, and grandmother of Alma Landrum, a tract of land fully set out and described in the amended answer and cross-petition; that said William Standafer conveyed said boundary of land to A. H. Johnson, the husband of his daughter Susan, in trust for the use and benefit of said daughter; that A. H. Johnson and wife Susan moved upon said land immediately after the execution of said deed and lived upon it for many years; that Susan Johnson died, and A. H. Johnson and his children continued to live thereon until his marriage to Leah D. Johnson; that said land was held in trust by him for the benefit of his wife, and upon her death descended to appellants; that A. H. Johnson had only an estate by curtesy therein; that he subsequently sold a portion of this land and invested the proceeds in the tracts of land designated as 1, 2, 3 and 4 described in the original answers and cross-petitions of appellants. The allegations of this amended answer and cross-petition were not denied by reply or controverted of record.

The evidence discloses the fact that tract No. 1 was bought and paid for by the decedent, and that

by his consent the deed was made as set out in the amended answer and cross-petition. In the case of tract No. 2 the evidence shows that only $75 of the $200 consideration was paid by decedent, and the remainder, consisting of $125, was paid by appellee, Leah D. Johnson. So far as the Combs' lot is concerned, the evidence tends to show that Leah D. Johnson paid the consideration for this property. The lot of land conveyed to Mary Belle Witt consisted of some 50-odd acres. In addition to this tract of land, decedent gave to his daughter $75. The evidence further discloses that decedent realized from the sale of the Standafer tract about $1,500. A portion of this sum was invested in the property in question. Upon the question whether or not the Standafer property was conveyed in trust to A. H. Johnson, the evidence of two of William Standafer's sons is to the effect: That William Standafer, prior to his death, divided certain lands among his children. The consideration was that each of them was to pay him $150 and assist him in paying off the purchase-money bond on part of the land that he had bought at judicial sale. That the $150 so paid by each was to be used in paying for other lands for other children. Upon the question of the intention of William Standafer, one of the witnesses testified as follows: "Q. I will ask you if it is not a fact that the main consideration in conveying this land to A. H. Johnson was to provide a home for his daughter, Johnson's wife?" "A. It seems like it was. A. H. Johnson moved in there and built him a house, before he bought the land, and it seemed like he wanted to let him have it for that purpose." Upon the same question the other son testified as follows: "Q. Tell the court the purpose that your father had in making

this deed and for whose benefit the deed was made. Tell all about the transaction as near as you can." "A. My father seemed to want to settle all of his children on a farm, and he made the deeds to them; sold it out to them for the purpose of buying a farm on Curly fork of Brown's fork over here for the other children." Upon submission of the case judgment was rendered in favor of appellee. From this judgment this appeal is prosecuted.

It is first insisted by appellants that, inasmuch as the allegations of the amended answer and cross-petition were not denied by reply or controverted of record, the court erred in rendering judgment in appellees' favor. As the amended answer and cross-petition were filed merely for the purpose of making the pleadings conform to the proof, and as the real issue between the parties was whether or not the four tracts of land described in the original answers and cross-petition were, as a matter of fact, trust property held by the grantees in the various deeds for the use and benefit of the decedent, we are not inclined to hold that the failure of appellees to controvert the allegations of the amended answer and cross-petition, which set forth facts merely tending to establish appellants' contentions as the main issue, entitled appellants to a judgment. As the proof showed that A. H. Johnson, in his lifetime, directed the deeds to the four tracts in question to be made in the manner indicated, and as it is not shown that any fraud was practiced on him or any undue influence was exercised over him, it is manifest that the mere fact that the deeds were made to other parties did not constitute a trust in his favor unless he plainly intended such a trust; that he so intended there is nothing in the record to show. It

would appear that decedent intended, during his life-time, to make some provision for those dependent upon his bounty.  In executing the deeds he simply carried out this purpose.  Of course, if the property, as a matter of fact, was not his, but was held in trust by him for the use and benefit of his wife, then he had no right to make conveyances of the land in ques- tion except in conformity with the trust.  This, then, leads us to a consideration of the question whether or not William Standafer conveyed the tract of land described in the amended answer and cross-petition and located on Curly fork of Brown's fork to A. H. Johnson in trust for his daughter, Susan Johnson.

Appellants contend that the facts proved bring this case within the rule laid down in Williams v. Williams' Ex'or, 76 S. W. 413; 25 Ky. Law Rep. 836.  In that case the decedent, David Cannady, owned two tracts of land.  He died leaving six children surviving him. One of his daughters, Prudence Cannady, married S. H. Williams. In the year 1853 the land was divided between the children.  One tract of 103 acres fell to Prudence.  She and her husband moved on the land and lived on it from that time to her death during the Civil War.  Before this, on July 16, 1853, the other children of David Cannady executed a deed to S. H. Williams for two tracts of land.  Williams paid nothing for the land.  As a matter of fact, it belonged to his wife.  She claimed it as long as she lived, and her husband, S. H. Williams, recognized it as her property.  Under such circumstances, this court held that S. H. Williams held this land in trust for his wife.  Another case relied upon by appellants is Black v. Black, 51 S. W. 456; 21 Ky. Law Rep. 403.  In that case one Wearthington died, leaving lands to his children. Mrs. Cassin Black

was one of his children. Instead of the land being
conveyed to Mrs. Black the commissioner deeded it
to her husband, Cassin Black. Mrs. Black was not
a party to the proceedings in the county court for
the division of the estate. There was nothing in the
record to show that she at any time sold, relinquished
or transferred the property to her husband. She was
not bound by the deed made to him. This court held
that the husband held the land in trust for his wife.
Another case bearing upon the question is that of
Jenkins v. Taylor, 59 S. W. 853; 22 Ky. Law Rep.
1137. In that case one N. H. Cartmell died the owner
of a tract of land. He left surviving him four chil-
dren, two sons and two daughters. One of the daugh-
ters, Katherine M., married John M. Taylor. After
the death of N. H. Cartmell, his children divided
the land into four separate tracts by agreement and
drew lots for their respective shares. By this agree-
ment Mrs. Taylor became the owner of 157 acres.
She and her husband took possession of it and oc-
cupied it until her death on February 17, 1855. The
other heirs of N. H. Cartmell executed and conveyed
their interest in the tract in question in considera-
tion of the release by Mrs. Taylor of her interest
in the parts allotted to them. The deed was made
to Mrs. Taylor and her husband jointly. Mrs. Taylor
died without knowing the title was not taken to her
alone. After her death one of her children discov-
ered the mistake in the deed and was about to take
legal steps to have it reformed and corrected, when
her father, with an intent to prevent and avoid such
action, told the daughter that so much of the deed
as conveyed him a part of the land was written and
executed by mistake and was not intended by the

parties thereto.  Under this state of facts it was held that John M. Taylor, the father, held the land in trust for his wife, Katherine M. Taylor.

In the case before us the land in question did not, as a matter of fact, belong to Susan Johnson.  Her father, William Standafer, was then living.  He conveyed it to A. H. Johnson.    Johnson had built a house upon the property, and also agreed to pay, as a consideration for the property, the sum of $150. The deed does not show that the property was conveyed in trust for Susan Johnson, nor was there any evidence tending to show that the property was impressed with such a trust.  Susan  Johnson  never claimed it as her own, nor did A. H. Johnson recognize it as hers.  On the contrary, he alone asserted rights of ownership over it.    Manifestly William Standafer had the right, if he so desired, to convey the land to his son-in-law.  At the time this conveyance was made, it was not unusual for the father to convey land to his  son-in-law rather  than  to  his daughter.  The evidence upon which we are asked to adjudge that A. H. Johnson held the land in trust for his wife is very meager and indefinite.  It consists merely of conclusions by the witnesses.  They did not state any acts of William Standafer, or any remarks which he made evidencing a purpose to create a trust in favor of his daughter. A careful reading of the two depositions touching this question shows that the whole effect of  their  evidence  is that it seemed to them that it was the intention of William Standafer to provide a home for his daughter.  This evidence is not sufficient to establish a trust.

It is next insisted that the court  erred in fixing the amount of personal property that came into the hands of appellee.  The proof shows that a grocery

and boarding house were conducted in the name of appellee, and the bank account was kept in her name. This was sufficient to create a presumption of ownership of the grocery and bank account by her. When, in addition to this fact, we take into consideration the evidence of appellee, we are inclined to the opinion that the trial court did not err in its judgment.

Judgment affirmed.